Mr. O'Brien? Here, Your Honor. We do not have video yet. There we go, Mr. O'Brien. Mr. Stewart? Here. Your Honor, counsel is present. Very well. Would you please call the next case for argument? 19-3300 from the Southern District of Iowa. Brad Wendt et al v. State of Iowa et al. Mr. O'Brien, we'll hear from you first. Thank you, Judge. Good afternoon, everyone. This case is about DNR officers King and Smith, Iowa Department of Natural Resource Officers, who had essentially a vendetta against my client, Mr. Brad Wendt, and anybody that hunted with him, which in this case was Dustin Hanson and also Donald Kinsey. Now, Brad Wendt is a sworn law enforcement officer. He worked for the City of Denison Police Force. It is clear through the evidence that we presented that these two DNR officers harassed Wendt for years. Just as an example, King alone filed ten different hunting charges against Brad Wendt, and every single one of them was dismissed. He was not found guilty on any of them. The District Court took this 1983 case and dismissed part of it as a motion to dismiss, and then dismissed the rest of it on summary judgment. The case had a lot broader focus at the time of trial, and we recognized that the District Court, in large part, in part of the case, we recognized the validity of their ruling. We focused our appeal on six particular issues, three substantive and three procedural. The procedural issues involved dismissal of our unreasonable seizure claim under the Iowa Constitution for the failure to plead the standard that applied to that. Now, keep in mind, this is new Godfrey, Iowa Supreme Court case, Godfrey, that allowed private rights of action to enforce Article 1 of the Iowa Constitution, our version of the Bill of Rights. There really wasn't even a standard that had been announced, and to my knowledge, not even today specifically announced, about how Iowa courts would interpret a seizure standard. We do think that there's some reason to believe, based on some of the decisions of the Iowa court, that they would look at it differently than federal courts do, and read it more broadly. We don't think, under Rule 8A, that we have to plead the standard to be applied. We don't believe that either Iqbal or Twombly require us to plead the standard to be applied. We have to plead a factual basis for the allegation, and we did that. What about in your briefs, though? Don't you at least have to tell the judge you want him to apply a different standard than the Fourth Amendment in order to show error? I would, except that the defendants didn't address that issue, and so I didn't address it either. The defendants didn't argue under the state constitution and make that claim, and so I didn't either. Didn't they move to dismiss the count? They did move to dismiss the count, but they made no argument about what factors should apply to discuss the state constitutional claim under unreasonable search. Keep in mind, this is a motion to dismiss stage. What did they do? Lump it together with the Fourth Amendment claim? Yeah, they just argued it all as Mendenhall factors. Well, that's an argument. That's an argument that you should apply the federal standard. It seems to me you could have argued, no, that's the wrong standard. Well, I don't think at the pleading stage I have to do that. See Rule 8A and Iqbal and Twombly. I've got time to put that together, don't I? I don't have to plead, for example, I can plead facts that support a malicious and reckless argument. I don't have to plead that I need to prove that by clearing a convincing standard at trial. That, I believe, is one of the procedural mistakes. The other one is they, District Court, sui sponte, dismissed our remaining Iowa constitutional claims, even though the defendants never briefed or argued any of those claims as part of their summary judgment motion. Then the final procedural claim has to do with this Facebook subpoena that the defendants put out there. We argued that the Facebook subpoena lacked probable cause because it asked for everything under the sun for three years on Facebook for a claim that there was one hunting violation on one particular day. They went back two years prior and up to the date of the time the subpoena put out. We put that all in our pleading, but we didn't use the term overbroad. The District Court essentially required, contrary to Rule 8A, that we needed to use the magic words, overbroad. We didn't use the magic words overbroad, we just argued lack of probable cause. The District Court said we didn't preserve the issue, we didn't give the defendants notice of our claim, and we think that was a mistake that requires reversal. I have your complaint, where do you even get close to an overbroad claim? We argue that it lacked probable cause. Can you give me a paragraph to look at? I can find it for you, but I know we argued that it lacked probable cause because it sought including private messages. That is in the complaint. If you'd like me to find it, I'll get it for you. I couldn't find it, candidly, that's not a frivolous, at least in my eyes, not a frivolous question. I'm trying to see if I even have it in the appendix, and it doesn't look like I do. Proceed, because I'll have somebody else read it more carefully than me skimming it. Go ahead. I believe we specifically alleged that it lacked probable cause, and Judge, that gets to our overall point, any claim that a warrant lacks probable cause could be structured as an overbroad claim. Even if they go to the wrong house, or they get the warrant for the wrong house for a search, you could argue that it's overbroad because there was no probable cause to search the house that they actually did search. I just don't think we play word games, or should play word games in deciding what a pleading means. It's a put them on fair notice of what the pleading was about. We allege the Facebook warrant was lacking in probable cause, and that's sufficient basis to argue that it was overbroad. It was clearly overbroad. They got 8,000 pages worth of material over a three year period. I would remind the court that the United States Supreme Court has recently, in the last few cases, in the Riley case, Riley versus California, and how people nowadays carry all this information on their phones, and that's part of what they were talking about in the Riley case. This is what people do with their cell phones. You see them all the time sitting there on their cell phones, and they're texting, but they're also posting things on Facebook. They're taking pictures, and they're posting on Facebook. Everything that they do for certain people ends up on their phone and on their Facebook pages. That's what they post it all about. To have an allegation that on one particular day, January 10, 2015, you three guys committed some hunting violations, and take from that, we get to go back two years and look at everything you posted, public and private, on Facebook, is clearly lacking in probable cause. In addition, not only is it lacking in probable cause, but they misinformed the judge about underlying facts. Mr. King, using a fake name, befriended Mr. Wendt, and was able to get access to his Facebook page. Keep in mind that all three of the plaintiffs in this case had their Facebook settings at the highest level of security you can have in Facebook, which is friends only. In order for Mr. King, if he would have just written it under his own name and asked to befriend, he would, of course, have been denied. He made some name up, and Mr. Wendt said, sure, I'll be friends with you on Facebook, and then he had access to all this stuff. He claimed in this Facebook warrant that if he got access to their Facebook material, he would find pics and tag photographs that would support the claim. He knew that was false.  You cannot tag a picture without posting it publicly on Facebook, so he misinformed the court about what he was up to. We know it's not illegal for police officers to use fraudulent names in that case. It seems a little unethical in my opinion, but that's fine. I understand. They can go do that. We didn't argue that that alone was a violation, but they certainly should have told the magistrate that we've been monitoring this guy's Facebook for the last couple of years and found nothing on there that supports any allegation. It's nonsense to say we want to get a warrant, and the information that we've already provided doesn't support any of the claims that we're making under the warrant. We believe that that was a substantive mistake that the court made in addition to being procedurally deficient because the court was requiring us to have alleged overbroad, have to use those magic words. We got rid of magic words when I first started practicing law 35 years ago. Then also, the case I want to talk about two things briefly before I reserve some more time, and that is this GPS tracker issue. They put a tracker on my client's car, clearly in violation of federal rules, without getting a warrant. We allege that based upon a text that one of them sent to the other person, King to Smith. He said, the tracker's been removed. The court just looked at that, and then the defendants came up with what I'm calling an alibi warrant, another case where they're claiming this is what he was referring to. The problem with that is King admitted in his deposition that he didn't have anything to do with that other case. There's no reason on the day these underlying criminal charges were announced publicly that King would text Smith, or excuse me, that Smith would text King and tell him the tracker's been removed. Plus, this alibi warrant, if you look at it, it says exactly the opposite of what the court found. It says nothing about removal of the tracking device. It says, and this track is sworn the next day, the day after he tells King it was removed, he swears in this pleading that's filed the next day that the tracker was placed, and that's all he says was placed. I recognize it's a return of service, but certainly a fact issue has been created on whether Mr. King, or excuse me, Mr. Smith knew and understood the English language and understood that if he had placed the tracker and then removed it on that day, he might want to write that out on the sworn statement he's making. He didn't do that. He just said, I placed it. Here's another point I'd like to make. Is your theory on the tracker that on the day of this text message, Smith went to Wendt's vehicle and removed it? Is that the idea? Yes. Then he told Smith that I did that, and there was no reason for it to be on there anymore. They had filed- How about you said he told King? Smith told King. I apologize. Yes. Smith texted King and said the tracker's been removed after he took it off Wendt's vehicle. There's no reason to keep the tracker anymore. They filed the charges, and they'd announced them publicly, and then he placed it on this other vehicle like he swore in the alibi affidavit the next day. What evidence did you put in about the whereabouts of Wendt's vehicle in the couple hours before the text message? We didn't put any evidence in on that, your honor. They have to have a warrant to place a GPS tracker there. No, no. I understand that. I'm wondering what evidence. You're asking for an inference that the text message referred to an act by Smith at Wendt's vehicle, and I'm just wondering if there's any other evidence that would corroborate your theory that Smith went to Wendt's vehicle during that hour or two. Is it just the fact of the message coming on the day of the charges and what the message said? No. It's the fact that it's that fact plus the fact that King had absolutely nothing to do with that underlying case. Why would one officer send a text to another officer in a totally uninvolved case? Keep in mind, it's very cryptic. The tracker's removed. King doesn't respond by saying, what tracker? What case you talking about? He just accepts it. Then you've got to look at the alibi warrant, which doesn't support the claim. Then finally, look, the whole point of putting a tracker on a vehicle is you can document its movement. The defendants have at their sole access to whatever downloaded information came from this tracker, and they didn't provide any of that, which could have shown that it wasn't placed on the Wendt vehicle if that, in fact, were the case. Were you able in discovery to get records of the trackers from the law enforcement agency involved? No, we were not. The alibi warrant was presented later on in the discovery process, and we took one look at it and realized it didn't say what they wanted it to say. We felt that we were in good shape to at least get over summary judgment on that basis because it says nothing about removing a tracker that day, which is what Smith texted King the night before. I'd like to reserve, unless there's more questions, the rest of my time for rebuttal. Very well, you may. Thank you for your argument. Thank you. Mr. Stewart, we'll hear from you. Thank you, Your Honor. May it please the court. I represent the Appalachian State of Iowa, Jeremy King and Brian Smith. On January 15th, 2015, DNR Conservation Officer Brian Smith received a telephone complaint from a citizen, Gary Huff, that plaintiffs Wendt and Kinsey were illegally hunting on his and his neighbor's property and trespassing on their property, and Officer Smith responded to that complaint. As Officer Smith stated in his deposition, since he's been a DNR Conservation Officer in Cass County, quote, the single person that I have received the most complaints on in Cass County of violating hunting laws is Brad Wendt, end quote. During the investigation into the complaint, evidence shows Officers King and Smith conducted a thorough investigation, were professional throughout the investigation, consulted with the county attorney when gathering evidence, and a magistrate judge found probable cause existed to grant warrants for Facebook records. Indeed, Officers King and Smith conducted themselves in the very way you would expect officers investigating a crime to try to piece facts together and determine appropriate course of action. As the court has recognized, qualified immunity is available to officers when acting reasonably under the circumstances, even if they make mistakes. It is well established that qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. Just recently, the Iowa Supreme Court recognized qualified immunity under the Iowa Constitution for officers who, quote, exercise all due care to conform to the requirements of the law, end quote. The district court found the plaintiffs, one, failed to meet their burden to prove constitutional violations and even if they did, two, Officers King and Smith acted reasonably during the trial to qualify immunity under both state and federal law. The court's ruling is understood. Mr. Stewart, could you cut right to this tracker issue? It's an interesting question and I'd be interested in what you have to say about why Smith would send a message to King on a case in which he wasn't involved in this context and whether that supports an inference that the case should go forward. Yes, your honor. The text that was sent, it's on Appley's appendix, page 43. It's blown up so you can see it very clear. There was one text that was received at about 8.30 and then there was another one that was received over an hour later at 9.43. The first one was a forward from a county sheriff saying good work on these guys, on those three guys. The second one, which is unrelated and there's an affidavit from Officer Smith saying the tracker has been removed. He works, here's what was in the record. Mr. O'Brien talked a lot about information that was not in the record. Here's what was in the record. They worked together. They were working together on different things. Yes, Mr. Smith said that they weren't working together on the particular case that the search warrant and that tracker was used on, but these are two colleagues. Obviously, they're going to talk to each other about what's going on. They work some of the same areas. Even if they weren't working together on that specific case, that doesn't mean Mr. Officer King had no knowledge of it or wasn't interested in it. It was an FYI to him that the tracker had been removed in that other action. What did King say when he was asked about this? Did he say he had knowledge of it? I thought he's a little fuzzy. I know he said he wasn't involved in the case, but did he say he had prior knowledge of this tracker and was therefore expecting an update or what did he say about it? I do not recall any testimony during the deposition and if Mr. O'Brien does on that issue. I just remember him saying that he received it and that he was not working with Officer Smith on that particular case. I do not believe that that's- I remember that part, but I thought you were just telling us that they worked together and he knew about it. No, they worked together and it's not in the record that he knew about it, but it wouldn't surprise that two officers who work together on a regular basis would be talking about something like this. The record is, to my knowledge, absent as to the reason why that specific text was sent, yes, your honor. The real question then is, is there enough circumstantial evidence to support an inference that the text referred to a tracker on Wendt's vehicle? Well, and that is Dave O'Brien's theory, but you have to speculate. There's nothing in there that even hints that it refers to any of the plaintiffs. What you either have to do is get evidence of a tracker on Wendt's vehicle or you have to speculate this refers to it and that is what the district court found, that it was not going to enter into speculation about what that text meant. And that we did provide the warrant application and the return, which the return does state that it constitutes a completion of the actions taken pursuant to this warrant. And Mr. O'Brien's theory that the tracker was on Wendt's vehicle all the way up until December 18th, and that Officer Smith sat on this warrant from November 12th all the way to December 18th, over 30 days before he placed it on this other vehicle, there's no evidence in the record for that speculation that he is arriving at. Well, on the other warrant, what's the timeline, the November, December timeline? Because the documents say on the materials that I read that the tracker was placed on the vehicle. Yes, your honor. And I thought that what your argument is, is that on the return date, the tracker was removed even though that wasn't written onto the materials. Is that right? That is right, your honor. What's your theory then on the timeline that you just mentioned, the November, December, I didn't follow that. The application for the warrant was made in November and the magistrate judge issued the And the tracker was placed, this is the affidavit by Officer Smith that was placed on there, it was removed from that other vehicle on December 12th. Your point was that it's not reasonable to believe that he would have waited until December 12th to put the tracker on? Was that the point? That he applied for a warrant, obtained the warrant, and then didn't act on the warrant all the way up until December 12th. Okay, I understand. Thank you. Before placing it on the vehicle. That is, and it is our belief that other than that one exhibit of the screenshot of Officer Smith, there is no evidence of it, and you really do have to engage in speculation to believe that that tracker was put on there. When applying, and I think Judge Colton, I think you were right on the first issue that we argued the application of the Mendenhall factors on the first issue that the dismissal of the seizure claims under both state and federal law, and the district court judge looked at Iowa Supreme Court Justice Appel's concurrence in State v. Wicks, and he gives a very good discussion that the Iowa Supreme Court will apply federal law to state constitutional claims when the parties do not argue differently. It's not a pleading requirement, it was about a briefing requirement. If you just claim this, and you don't argue you should treat them differently, the court will treat them the same, and indeed, the Iowa Supreme Court in the past has applied the Mendenhall factors to state seizure claims brought under the Constitution. The plaintiffs admit on appeal that the Iowa Supreme Court has not articulated any other Mendenhall factors at this point, so it was proper for the district court to do that, to apply those when dismissing that claim. With regard to the district court granting qualified immunity to Officers King and Smith on the state constitutional unreasonable search claims, the Baldwin case, the Iowa Supreme Court answered a certified question from the Northern District of Iowa while the motion to dismiss was pending. We both briefed that issue, the district court asked for supplemental briefing, and all the parties agreed that the Baldwin case applied to the case that was pending before the district court. The Iowa Supreme Court said qualified immunity would be available to officers who exercise all due care to comply with the law, but it did not discuss what factors should be considered when determining if that standard has been met. The district court looked to the Baldwin case in the Northern District of Iowa where Judge Bennett did apply some factors. He looked at bad faith, malice, lack of probable cause, and lack of reasonable grounds for the conduct. In footnote seven of its order, the court said the parties did not specifically brief the differences between these two standards. Then he cited to Barclay versus Gabrielle Brothers for the proposition that if the parties had been given notice and had the opportunity to submit evidence in opposition, then the court can rule sui stante on that issue. The court articulated that the parties knew about this difference in the standards. We both briefed it in the motion to dismiss. The plaintiff had the opportunity to resist defendant's motion for summary judgment arguing that there is a different standard that should be applied and the plaintiff didn't. The court applied well-established law and actually Federal Rule Civil Procedure 56F says the same thing that a district court can grant summary judgment on sui stante when the party is given notice and had the opportunity to resist. Do I understand right that in your qualified immunity briefing, neither of you mentioned the state standard, right? Yes, Judge Benton. There was a section in our motion for summary judgment entitled that the defendants were entitled to qualified immunity and we argued that they were entitled to it under both state and federal law. At that time, because the Iowa Supreme Court had not listed any factors, the only factors either party argued under were the federal ones. And then the district court said, you were wrong, you should have briefed the differences and we didn't do that. So how did the district court apprise you, it's in the passive voice, so I don't know really what it means, the district court says clearly that you were both apprised of the difference in Iowa's qualified immunity standard. How were you apprised? I interpret that as a response back to the motion to dismiss. When the Baldwin case was issued during the motion to dismiss, the judge said to the parties, there is a different standard in Iowa now than the federal standard and I would like you two to submit supplemental briefs. This was a court order, counsel? It was a court order. I think they requested supplemental briefs. Yeah, but it was a court order, thank you. Okay, it was a court order, yes. Regarding the Facebook warrant as being overbroad, your honor, I will direct you to the amended complaint where he brings up the complaint against the defendants. It's amended complaint paragraphs 13 and 58. And he states the defendants obtained search warrants for Facebook records including private messages without probable cause and without stating any factual basis whatsoever. The very first time that it was raised by the plaintiffs that it was overbroad for going back to 2012 was in their resistance to the motion for summary judgment. Prior to that, in the motion to dismiss and in their amended complaint, it was because it sought private messages and they didn't state a factual basis is what the allegation was. And what Mr. O'Brien failed to mention in his argument was that every application for the search warrant had a statement from Victoria Duell that stated in January of 2013, she saw Facebook photos and references that made her think that they were illegally hunting. Mr. King went to the county attorney and was advised to apply for a search warrant going back to December of 2012. He followed the county attorney's advice and the magistrate judge found probable cause and he specifically referred to the Victoria Duell statement that he relied on that partially for finding probable cause. So the district court found that Officer King reasonably believed that that warrant application was supported by probable cause and therefore he granted qualified immunity to Officer King. I am almost out of time and the last issue was about the harassment. All I have to say about that is I agree completely with the district court that any harassing conduct was not in the investigation. This was restricted to was this a fair investigation? Did they look at the evidence and the court said even if it was harassing, it was outside the investigation and no fundamental right was involved. For the reasons I have stated, at least request the court from the district court in all respects. Say Mr. Stewart, you mentioned earlier in response to Judge Benton that the court had entered an order saying the parties were apprised of the new standard on state law. Did the parties then file supplemental briefs applying the new standard? In the motion to dismiss, we did, both of us filed supplemental briefs. That was when he apprised us. It was the motion for summary judgment in his footnote where he said, I have apprised you of the new standard and neither one of you have addressed it. You did not brief the differences between the new standards in this motion for summary  I see. Very well. Thank you. Thank you. Mr. O'Brien, we will hear from you in rebuttal. I believe you are still on mute, Mr. O'Brien. Judge Benton, just to let you know that what Mr. Stewart just read from was our amended complaint. We did not get that text message until part of the discovery, so we filed the amended complaint and that is where we put out the information about the GPS tracker. I did not argue the God-free Baldwin arguments under state law because the defendants did not. We are not the smartest guy in the world, but in a case just before this that was up before this court as well, where the same judge threw an Iowa constitutional claims out to Sua Sponte, I raised quite a stake in front of the district judge and said you can't do that. There are all these different changes. Here is this Baldwin case and he ignored all of it. Sua Sponte threw me out and your decision doesn't address that issue, but it was preserved on appeal. This case came up. The defendants didn't argue any different standard. They didn't make any arguments whatsoever. I read the case law that says if you don't argue it, if you don't brief it or argue it, it's waived. I said I'm not going to get into it because they didn't and I still maintain that. Finally, the statement made by Mr. King during his deposition was that he didn't have anything to do with the investigation of this other GPS tracker case. There's just no reason to text him about it. Finally, don't forget, we filed a due process claim here, a substantive due process claim. After they lost the underlying criminal case, these two defendants surreptitiously got together and delivered a memory stick with Facebook information and other information and tried to get Mr. Wendt fired. If that doesn't shock your conscience, I don't really know what would. Thank you. All right, thank you very much to both counsel for your arguments and for being in this format. The case is submitted and the court will follow.